May it please the Court, Edward Himmelfarb with the Department of Justice. With the Court's permission, I'd like to reserve two minutes for rebuttal. This is a Qualified Immunity Appeal on behalf of FBI Agent Matthew Oravec. The plaintiffs contend that Agent Oravec violated their equal protection rights by doing what they considered to be an inadequate investigation into the deaths of two Native American men, and they charge that he did this or didn't do it because of bias against Native Americans. Our position is that Agent Oravec is entitled to Qualified Immunity because the plaintiffs have failed to plead non-conclusory allegations of differential treatment, and this is wholly inadequate under Iqbal and Twombly. More specifically, the plaintiffs have not made a credible showing of different treatment of similarly situated persons, which is the standard set out by the Supreme Court in the U.S. against Armstrong for the criminal context, and this Court has recently applied in the civil context in Lacey against Maricopa County, which we submitted on a Rule 28J letter. Counsel, I realize these are all part of the same complaint, but at least as to the Bear Crane investigation, there are a whole lot of very specific allegations with very specific results named several different matters that have occurred, references to United States senators, city councils, and others raising this very issue. Why doesn't that, at least that part of the complaint, satisfy the Iqbal and Twombly requirement? Well, Your Honor, there are a couple of things to say about that. The first thing is that those are allegations that were generally pleaded. This case is much broader than the one claimed against Agent Oravec. I understand. I understand. Those were pleaded with respect to the broader claim, the request for equitable relief against the- Right, but he was the alleged actor or non-actor, as the case may be. Not entirely, Your Honor. With respect to these two investigations, he was. But the case is much broader than that. The case has to do with general law enforcement in Indian country, and those allegations were dismissed by the District Court, and they're not on appeal here. So those allegations really are directed to how the U.S. government is providing law enforcement support or not on Indian reservations. Do you agree that the case law does require the government to provide essentially equal law enforcement on reservations to what is done outside? No, that's not- I wouldn't say that's the way- You would not say that? No, I would not say- How would you characterize the obligation of the government? Well, the obligation is more of a political obligation, and that's a part of the case that really isn't here. That's really the broader issue raised in District Court that was dismissed. You take the position that it- I suppose the best way to put it is that if- let's just say that there are 20 murders committed on a reservation and the government doesn't even bother to investigate, that's okay. It's just a political matter. Are you saying the law doesn't get to that? No, Your Honor. I'm not saying it's okay. I'm saying that- I am saying it's a political matter. There's a reason for the government to provide- So there's prosecutorial discretion, there's investigatory- There are many different reasons. There are all kinds of things like that. Yes, Your Honor. There are many reasons that these might not be pursued. That's correct. But there is a special- There are- There are special statutes that provide jurisdiction to the federal government- Yeah, but they become federal crimes. I beg your pardon? Federal crimes. That's correct. They're treated as federal crimes. It's treated as a federal enclave. And so the government has some obligation to do something. Oh, sure, sure. And- but what I'm saying is- If there's an allegation that the government did nothing- If there's an allegation that the government did nothing, the problem in this case- that was alleged and that was dismissed for lack of standing because it was considered to be a generalized grievance. No, but with respect to a particular crime, if the allegation is that this was a crime, the government did nothing, it's because it was an Indian. And these are specific crimes we're talking about here, not just generalized. Let me say this. With respect to- I'll try to answer your question, Your Honor. Yeah. With respect to specific crimes, if there's a showing of differential treatment, if they were treated differently because they were Native Americans instead of non-Native Americans, yes, that is a- Are we talking about the complaint?  Are we talking about the complaint? Yes, we are talking about the complaint. Because you say showing. Showing, I'm sorry. You don't really mean that.  No, I don't mean that. So we're supposed to look at the complaint. There has to be an allegation. There has to be an allegation, though. And this is taken very seriously. And I was going to- I mentioned the Lacey decision. I think Lacey is an example of how seriously this Court has taken the pleading requirements under Iqbal and Twombly in a context of a claim of differential treatment in law enforcement. In that case, the plaintiffs, they were publishers, and they published some personal information about a local official in Arizona allegedly in violation of a state statute. And there was a prosecution initiated against them. And they came up with the names of other publications that had published the same information and had not been prosecuted. But the Court said that's not enough. There's a second element of the statute. They were not necessarily similarly situated to the people on that list because the second element required an imminent and serious threat to the public official. And there's nothing in your list of other publishers that shows that those people, those publishers also posed an imminent and serious threat. Counsel, with respect, I'm having difficulty squaring your position, the government's position, with Nordlinger and with Village of Arlington Heights. And when I look, for example, at page 14 of the amended complaint, I mean, this is pretty darn specific here about Mr. Bear Crane's death. You know, it talks about the responsibility of the agent. It talks about who this person was, what was asked to be done, the fact that nothing was done, lots of evidence that brought forward and so on. What more do you need? You need a comparison. Under the equal protection principle. Well, that's true of the second one. But in this one there was a comparison, was there not? In Bear Crane? No, I don't think so, Your Honor. Where was there? I don't see a comparison between the Bear Crane investigation and any other investigation done by this agent. If I could. Your Honor, there really is nothing in the complaint. Okay, I'm going to look at this and I'll get back to you. No, I mean, that's certainly our position. Our position is that what you need to do if you're the plaintiff and you're trying to show a violation of equal protection through differential treatment, you need to make a comparison. It's just like under Armstrong in the criminal context. You can't just say that in some of the cases we cite in our briefs say this. We are African-American and we were prosecuted and white people did exactly the same thing we did. You have to be able to show specific people who, in fact, did exactly what you did and were not prosecuted. That's the standard that's set out in Armstrong as applied through Lacey in the civil context. Counsel, if I could ask you a question. I'm a little confused as well because I have a problem trying to figure out what's a fact, what's an allegation, and what's a conclusion. And I'm trying to draw that distinction. Turning to what Judge Smith referred to at page 14 of the complaint, B-1 or B-I says that the coroner ruled Mr. Bearcrain's death a homicide. That's a fact. That's a fact. A non-Indian man admitted to shooting Mr. Bearcrain. That's a fact. That's absolutely a fact. The next one is a little more troubling for me, though, because it says upon information and belief, I'm not sure if that's a fact or not, but the same non-Indian man admitted to a third party that he had shot Mr. Bearcrain in the head during a dispute over a horse. I suppose the latter part of that would be a fact. If there were not information and belief, I guess it would be a fact. All right. The next one says the evidence appears to counter the self-defense claim made by the non-Indian man. Now, that to me, I'm not sure. Is that a fact? Is that an opinion? Is that a conclusion? That's a conclusion. That's a legal conclusion, Your Honor. Then the next one says there is no evidence that the FBI performed or used common investigative tests. Is that a fact or is that a conclusion? I have more of an opinion than a fact. Well, suppose it just said that they didn't do anything. They didn't do anything. Right. That's what it means, isn't it? That would be a factual allegation, but the thing is that murder – that alone doesn't get you anywhere because a murder – there are a lot of different ways of doing murder investigations depending on the nature of the situation. You have a case – you have a case here in which you have – I'm sorry, Your Honor. You have a person who's admitted that he shot the man. That could be a defense. You could have – you could litigate that, but I don't know how you get to the point of saying that the plaintiff has to allege what was in the defendant's mind when all that the plaintiff knows is that there's a federal crime, they investigate some, and he investigates some, and he doesn't investigate when it's an Indian. But they don't show that there were any comparable investigations of other murders, of non-Native Americans. Well, what I do see here is on page 26 of the amended complaint subparagraph, I guess it's 57C, the allegation is that these agents deprived plaintiffs Stephen Bear Crane and Robert Springfield of the security and protection accorded non-Native American citizens. That's your comparison, isn't it? No, it isn't, Your Honor. With all respect, Your Honor.  And according to the government, what do they have to do? List, you know, 20 treatments of non-Native American homicides and exactly what they did? Well, Your Honor, I would say I would not agree that 20 is necessary. Well, two, three, four? I would say yes. In our brief, we put it several. Yes, more than one other one because, you know, different cases are very different, and you might have a very perfect reason for doing two cases differently, whereas if you start seeing a pattern, then that's enough to get you somewhere. But this also, going back to 57C, this is really not related so much to the – this is more what they say – I think this is what they say their damage is, and this is sort of more of the broader allegation. This doesn't make a comparison of specific cases. We're talking about specific other cases. So you're saying it has to be not only in the complaint but in the same section of the complaint, a direct – almost like a chart back and forth? It's not a question of where it is in the complaint. It has to be in the complaint. Well, where did the – there was a magistrate judge's report. That's right. Judge Osby. She did a very careful job. Well, in that opinion, not careful enough. I know. Tell me what is it – where did she go wrong? Let's try this from a different angle. Yeah. What she did and what the district court adopted is that both the magistrate judge and the district judge focused on allegations of motive. Now, we've argued also those allegations of motive are insufficient, but we can assume for present purposes there are plenty of allegations of invidious motive. Right. That's only half of an equal protection claim. The other half isn't to allege differential treatment. There's no discussion of differential treatment. It's all about allegations that the magistrate judge thought showed motive. Well, then should we send this back for it to be amended? Well, our position is no. If the court found it was adequate in these respects and you say, well, if not, it needed to have some more words. Oh, the opinion? No, the opinion – what we're saying, Your Honor, is that amending the complaint would be futile because – But couldn't they allege additional facts? I mean – Could they allege that somebody – that they had this list of comparable people the way the court required in Lacey? That's what you seem to be asking for. Yes, we are asking for that. If that's what you want, what's the matter with Judge Schroeder's suggestion? We send it back to the district court, permit the plaintiffs to amend their complaint to make the very kinds of specific allegations with respect to a comparison between the treatment of Native Americans and non-Native Americans in comparable situations. That's what you're asking for. That's exactly what we're asking for. You say they have to name them, referring to a case that's not in a racial discriminatory context at all. I'm sorry. The Lacey case, I thought – I may be wrong. It may involve racial discrimination. Other race cases. No, no. But it's a selective prosecution case. I understand that, and we had them out of the Vietnam War, and they've always said you have to identify. But in the racial discrimination case, you don't have to allege that if they serve white people and they don't serve black people, to name that they serve John X, Mary Doe. So I'm not understanding where we get this obligation to name names. Let's go back to Armstrong, Your Honor. Armstrong was a race discrimination case. It was African-American criminal defendants who claimed that they were prosecuted improperly because of their race. They were selected because of their race. It was a race case. Many of the Armstrong cases are race cases. And in the Sixth Circuit's Gardenhire case, which we cited in here, it's a civil case applying Armstrong. That was also a race case. They were a mixed-race couple, and they claimed that the sheriff refused to investigate and arrest another person because they were a mixed-race couple. So it's not necessary that it be race. It's an equal protection claim. Race, obviously, is a core element, an important element in many of the cases. Okay. You have about a half a minute. We helped you. I think that's the wrong direction. Yeah, now we're going over to Armstrong. I've always thought of myself as medium height, but there are instances like this that show that's not true. May it please the Court. My name is Trish Bangert, and I'm the counsel for the Plaintiff Appellees. And I am here with Gene Bearcane, who is my co-counsel, and with my clients someplace back there, Earlene and Cletus Cole. And I would also like to reserve two minutes. No, you don't get any more. That's it. I don't get any more? Okay. No, you don't have to serve. All right, then I'll take my entire 15 minutes here, Your Honor. First of all, I'd like to point out two misstatements that the government repeatedly makes in its pleadings. One is that the FBI referred this case to the U.S. Attorney's Office for prosecution. We did not plead that. What we said in paragraph 45 is that the case was referred to South Dakota by Montana because there was a conflict in Montana. And therefore, the U.S. Attorney's Office in Montana, in South Dakota, had jurisdiction over this case. The second misstatement is that in Elliott Park, there was an allegation or there was evidence that all of the officers sued had looked at or had investigated similarly situated cases not involving Koreans and Micronesians. That is not true. One officer had investigated another case. The other two officers or in the case of the other two officers, there was no evidence of similarly situated people being investigated. What's your position? I think I know it pretty clearly, but I'd like to have you articulate it. The government makes much of the fact that there is no allegation, it says, in the complaint with specificity as to the non-Native American crimes that it investigates. It's basically a discriminatory comparison. Is there a requirement under the Supreme Court or our case law in a situation where you're dealing with equal protection that aside from alleging, you know, discrimination based upon race, that you have to also allege with some specificity the treatment of non-Native Americans in like situations? That's the, well, quick answer, no. And on what do you rely? A longer answer. Is that what the government is trying to do here is take the pleading standards in Armstrong, as they interpret them, and taking those pleading standards and trying to apply them to any case involving any law enforcement. And that's bad policy. It's bad law. They interpret Armstrong as requiring you, the circuit, to come up with a rigid checklist of acceptable allegations that's then imposed on the district courts, and that's not what Armstrong did. First of all, it's not clear that Armstrong heightened pleading standards. But more important, even if it did, the government is taking situations in which there's selective prosecution and trying to apply the standards to basic police investigations. There's a huge difference between weight and, if I'm pronouncing that correctly, and the selective enforcement of draft registration, because there's political considerations, legal considerations, socioeconomic considerations in that prosecution, and the provision of basic police services. Basic police services, I think, are more akin to educational services than they are to prosecutorial decisions. We had the, I think it was the weight case, the Armstrong case, where, but Armstrong is a defense to a criminal prosecution, right? Yes, Your Honor. And if you're going to say that you prosecuted me because of this reason and you didn't prosecute somebody else, you better have somebody else who didn't get prosecuted. Absolutely, Your Honor. And I think that the Ninth Circuit precedent is that you can prove a violation of equal protection in non-prosecutorial cases in a variety of ways. You don't have to. The district court is not stuck with one way of proving. I guess, as I understand the government's position, they're really stemming out of Twombly and Iqbal, which, of course, we're all trying to grapple with and how far it goes. Why is the government wrong in requiring a greater specificity as a result of Iqbal and Twombly? I don't think they're wrong, Your Honor, in saying that there needs to be greater specificity after Iqbal and Twombly. And as I pointed out in my brief, we're still, yes, you're right, all struggling with that. But I don't think it goes as far as the government would like it to go. Iqbal said that these kinds of decisions, the sufficiency of the complaint, those decisions have to be made with common sense and with judicial experience. And that what we're talking about are factual contentions that allow the court to infer. And the government seems to be wanting to take that discretion away from the district courts to say that you can't infer. Well, it seems like it's a balancing act between what you would normally have in a notice pleading versus what you'd require in a summary judgment. It seems like the government in effect wants you to put on your evidence for summary judgment as opposed to something in the pleading stage. Does that make sense to you? That's what it feels like to us, Your Honor. And they've cited to a number of cases that are at the summary judgment stage. They've cited to a number of cases that were appealed from summary judgment motions. So let me just think out loud here. Under notice pleading, I suppose, you could say that the investigatory practices of this office and particularly this defendant violate equal protection because they are discriminating against non-Indians in the family of Indian victims. Excuse me, I misspoke. Against the Indian victims and the families of Indian victims by not investigating, period. And that would be notice pleading. That would be good enough, I would think. But if you have a greater specificity, I mean, that would be pure stating what your claim is. If you have a requirement of greater specificity, you would, it seems to me, what was in the magistrate judge's mind here was you allege particular facts in which in this particular instance as in the Springfield investigation and the other investigation, they did not do the same things that they would have done in another investigation or they did this. You have specific instances where there was a denial of proper investigatory techniques. And then they are saying, no, you have to go one step further than that and say, and these were different than the techniques that they used in this particular case. And you are saying you meet the middle threshold, which is all you really have to do, and what they are saying is importing in the standards that have been used in prosecution cases, not in civil actions. Absolutely, Your Honor. And again, what they seem to be saying is a judge can't infer. For example, what we're saying is that Agent Orovick departed from the norm. The norm is in basic investigative provision of basic investigative services, you secure the scene, you interview witnesses. Can I ask you a question, though? Yes, Your Honor. Where in the complaint does it allege that? It alleges it. Because I've been struggling with the issue of what's a fact, what's an allegation, what's a conclusion, and Iqbal requires that facts be alleged. So just to give you an example, in the report and recommendation at page four, the magistrate judge says the following. Plaintiffs allege that Wyand and Orovick were assigned to investigate Bearcren's death, but despite repeated requests, refused to do anything but the most cursory investigation. So I'm trying to figure out, is that a fact? Is that an opinion? Is that a conclusion? And are there cases where perhaps nothing more than a cursory investigation might be called for? And so I'm struggling with trying to figure out what are the facts? Because Iqbal and Elliott Park and Lacey required facts, right? So what are the facts? And you just told me some facts that if, in fact, those were pled, might be important in our decision-making. For example, sir, on page 14 of the complaint, and I think Judge Smith referred to this earlier, we say that this was a homicide, that the shooter admitted to killing Mr. Bearcren. But does that show any kind of discriminatory animus? If you go down to there's no evidence that the FBI performed or used common investigative tests and data gathering. Is that a fact or is that a conclusion? I think that's a fact, Your Honor, that they didn't. And maybe it was inartfully pled. That may well be the case. But what this is saying is they did not use the normal procedures. And based on Willowbrook, based on Elliott Park, a departure from normal procedures can show discriminatory effect. We also pled that the agent departed from normal procedures in basically substituting himself for the victim's advocate. Can I switch you to a slightly different issue? Let's assume, arguendo, that I think you successfully met the pleading standards of Twombly and Iqbal with respect to the Bearcren investigation, but not necessarily with respect to Springfield. I'm not saying that's the case, but let's just say hypothetically that that were the case. What should we do in that situation? Basically do away with the Springfield complaint at this point because it wasn't adequately pled and send it back with respect or move forward with Bearcren, or because it's all part of the same complaint, send it back for an opportunity to amend with respect to the Springfield portion of the complaint and allow you to basically beef up your complaint and then move forward at that point. What's the appropriate step to take here? Well, two things, Your Honor. One is that we feel like we have adequately... No, I get your point. But let's just say hypothetically that there is a discrepancy, an inadequacy, at least with respect to one of the murders. We would certainly request, as we did in our pleadings, that if you find that the complaint is not well pled in any aspect, that you go ahead and send it back to the district court so that we can amend it. I think the court had a really good point that the magistrate judge did not look at the maybe discriminatory effect part of equal protection, but I think that was because it really was not raised by the government below. The major issue below was whether there was a constitutional right. Also, as we pointed out, we do have new evidence. We have an affidavit from a woman who was actually on the ranch when Stephen Bearcren was killed and is familiar. But to some degree, though, I mean, you're sort of prosecuting the case. We're talking about the pleading stage here, and I'm trying to find out what is the appropriate thing for us as a court of appeal to do if we find hypothetically that you have properly pled with respect to one person but not with respect to the other. And you're saying you believe that we need to send it back for an amendment. Do you have any case law or anything that would suggest that's the appropriate remedy? I think the Polish, and I'm not sure that I am pronouncing it right, but Polak case, in that case the plaintiffs were seeking to amend their complaint after the defendants had taken other actions after the complaint was filed. And I think the district court dismissed the case and did not allow an amendment, and the circuit court said that that was improper. We have under Federal Rules of Civil Procedure 15A2 the right to leave to amend where justice so requires. Is that, in effect, what your argument is? Yes, Your Honor. Did the government distinguish between these two in its brief? I don't think so, Your Honor. I think that they treated all of this as one. Okay. All right. Are there any further questions? Thank you. Thank you, Your Honor. I have two really quick points. Maybe I should squat down a little bit rather than waste the Court's time with raising it. I'll try to talk a little more about it. We won't count the time if you raise it, if you feel better about it. There we go, right side. Give him his time back. I'll give you a minute. Okay, thanks very much, Your Honor. Two very quick points. One of the really important aspects of Iqbal is it says, you know, you can plead things that may be consistent with improper behavior, but you have to show that there's a plausible claim beyond that. And what it does is it says, you know, there may be much more likely explanations of government conduct. And Iqbal, of course, was a qualified immunity case, a case against the Attorney General. And they were saying, well, in that case, the obvious other explanation was 9-11 happened. And when you take a case in which you're alleging that somebody did an improper investigation of a murder, you really have to allege that there's something more than that. But, Counsel, haven't they done that, though, with reference to the comments of various senators and so on? It seems like they have alleged that there's a pretty – it's pretty well understood in certain parts of the country that this is a common problem. Doesn't that go to the plausibility issue? With all respect, Your Honor, that's a broad claim against the government. You're talking about a specific individual FBI agent here. He has no responsibility for what the government is or isn't doing elsewhere in the country. They're suing him personally for damages. He can't be responsible for the rest of what the government does. That was what was thrown out. Okay. And very quickly, the second point is that this principle of Armstrong really does apply to a wide variety of different types of law enforcement activities. And I could go through the cases. You know, Bell involved arrests, this Eighth Circuit case. Barlow's Seventh Circuit case is investigative techniques, where they went and talked to people in the train station. What's the closest in the civil context? Well, I think Gartenheuer is pretty close. It's Sixth Circuit case, of course, not this circuit. That one was the one involving the mixed-race couple. Right. And they wanted the sheriff to investigate the store on the next door. And this case, this circuit, Rosenbaum case, which is cited in – Thank you. Okay, thank you. The case just argued is submitted for decision.
judges: Benitez, Schroeder, Smith M.